FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 0 8 2021

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ALIKA M. SMITH                                                          PLAINTIFF

CASE NO. 4:21-cv-1068-JM

ARKANSAS FEDERAL CREDIT UNION                         DEFENDANT

**COMPLAINT**

This case assigned to District Judge Moody
and to Magistrate Judge Ray

Introduction

Defendant violated the rights of Plaintiff in violation of Title VII of the Civil Rights Act of 1964 and as amended, 42 U.S.C. §§12101 – 12213, the Ark. Civ. Rights Statute, codified as Ark. Code Ann. §16-123-101 et. seq., that resulted in Plaintiff having been discriminated against based on protected classifications, race and sex[gender]. This is also an action for declaratory judgment pursuant to 28 U.S.C. §2201 to declare the rights and other legal relations between the parties. The plaintiff seeks equitable and injunctive relief as well.

Jurisdiction

1. Jurisdiction and venue of this Court are invoked pursuant to Title VII of the Civil Rights Act of 1964 and as amended, and the Ark. Civ. Rights Statute, codified as Ark. Code Ann. §16-123-101 et. seq.

2. The unlawful employment practices alleged to have been committed against Plaintiff were committed in the State of Arkansas, and in Pulaski County.

## Parties

3. Plaintiff, Alika M. Smith, is an African American female, and resides in Jacksonville, Arkansas.

4. Defendant is a Credit Union, Limited Liability Company, organized and licensed under the laws of the State of Arkansas to do business in the state as a Financial Institution.

5. The Defendant, Arkansas Federal Credit Union, hereinafter "AFCU", is an employer within the meaning of 42 U.S.C. §2000e (b), (g).

6. Defendant AFCU lists, as its place of business, 2424 Marshall Road, Jacksonville, AR 72076, and this is the location where Plaintiff worked.

7. Defendant has not designated an agent for service of process.

## Allegations

8. Plaintiff was employed by Defendant in February 2019, as a Collections Support Manager. Her duties consisted of coordinating all activities associated with account management and collections of member accounts, coordinating with internal departments and outside agencies to protect assets and compliance with state and federal laws. In her capacity as Manager, she supervised up to seven employees, whose duties were to

monitor accounts for delinquencies, contact consumers to obtain payments, and generate reports reflecting these activities.

9. One of the employees who reported to Plaintiff was a female African American, and was someone who had, historically been a below-par performer, failing to meet standards and expectations for more than three years prior to Plaintiff assuming the supervisory role.

10. Prior to Plaintiff becoming her supervisor, the employee referenced in Paragraph 9 above had been supervised by Caucasian women who verbally disparaged both the employee's performance failures, but also made discriminatory remarks regarding her appearance and demeanor but took no affirmative action to correct the employee's job performance.

11. Once Plaintiff became the deficient employee's supervisor, she was immediately instructed to deal with the employee's dereliction to duty and substandard achievement by terminating her employment.

12. In addition to the non-performing employee, Plaintiff also inherited a department that had been poorly managed previously, accounting for numerous accounts that were delinquent and lacking any affirmative action on the part of AFCU to collect the accounts.

13. After Plaintiff made a thorough assessment of the status of delinquencies, she met with her supervisor to discuss her strategy for attacking the problem.

14. The meeting referenced in the preceding paragraph involved her immediate supervisor, Plaintiff, and Human Resources. Plaintiff quantified the extent of the problem, what she intended to do to correct the situation, and what she needed from her supervisor and Human Resources by way of support.

15. Plaintiff immediately implemented her plans but did not receive the support she had requested from either her supervisor or Human Resources.

16. Plaintiff again met with her supervisor, her supervisor's manager, and Human Resources. The gravamen of the situation was that the senior managers failed to deliver on the additional staffing support that was needed to bring the collections activity current.

17. Surreptitiously listening in on the meeting from another location, and not disclosed to Plaintiff, was Chief Executive Officer, Rodney Showmar.

18. Plaintiff was not apprised of the reason for Mr. Showmar's involvement on the call referenced in the preceding paragraph, nor was his role disclosed in the subsequent or intervening events in the aftermath of the meeting.

19. Despite requests for the help Plaintiff needed, management never provided it or responded in any affirmative way.

20. In response to the COVID-19 pandemic, businesses throughout Pulaski County, including AFCU closed to in-person interactions with the public. Within Plaintiff's workplace, Caucasian staff was allowed to work from home. Plaintiff was required to continue reporting to her office and be exposed to heightened potential exposure to the virus.

21. Difficulties in the collection process continued, particularly with subordinate and other office employees working remotely from home except for Plaintiff.

22. During the time employees were working from home, two causasian managers returned to the office to meet with Ms. Smith. Their purpose was to gain her assistance calling an African American consumer with whom they had antagonized to the point of her asserting they were being racist toward the member and refused to take their calls.

23. The two managers, Amber Reilly and Shelby Healea, insisted Plaintiff call the consumer on their behalf as though only Plaintiff could speak 'African-American-ese' to the member and obtain her cooperation.

24. Plaintiff was denied her requests to hire additional staff to handle the increasing workload, but once Defendant terminated her employment, the two managers referenced in the previous paragraph, returned to the office, no longer working from home.

25. The two managers immediately began hiring temporary employees, and a vault manager, Chrissy Cole to assist Amber Reilly, Plaintiff's manager.

26. By November 6, 2020 Plaintiff resolved to, and did, file her initial charge with the Equal Employment Opportunity Commission, hereinafter, "EEOC". See Exhibit One, attached hereto.

27. The charge referenced in the preceding paragraph was numbered 493-2021-99219.

28. Shortly after filing the charge enumerated in Paragraph 27, Plaintiff notified Human Resources that she had done so. Two days later, Plaintiff's employment with Defendant was terminated.

29. Plaintiff was satisfactorily meeting Defendant's expectations for job performance at the time she was notified of the termination.

30. Upon information and belief, Defendant terminated Plaintiff from employment for discriminatory reasons, and in retaliation for her having filed a complaint with the EEOC.

31. Plaintiff commenced a job search to find replacement employment and simultaneously filed a claim for unemployment compensation benefits.

32. Defendant provided an explanation to the Department of Workforce Services for why Plaintiff was no longer employed by Defendant. Based on the information Defendant gave, Plaintiff's application for benefits was denied.

33. Plaintiff appealed the adverse ruling to the Arkansas Appeals Tribunal, and again to the Board of Review.

34. A hearing was held on July 15, 2021, at which time Defendant's employees, Plaintiff's former supervisor, and the Human Resource Manager, offered testimony under oath that falsely characterized their reasons for terminating Plaintiff's employment, and specifically contradicted the information they had previously provided to the EEOC.

35. Defendant fabricated a pretextual reason for discharging Plaintiff to mask the true and discriminatory reasons for their action.

36. Plaintiff initiated a new charge with the EEOC upon realization of the deception Defendant's perpetrated to manipulate the outcome of the EEOC's investigation into her original complaint.

37. The charge referenced in the preceding paragraph, numbered 493-2021-01599 was filed August 13, 2021.  Subsequent to this filing, Plaintiff was issued a Right to Sue letter by the EEOC.  See Exhibit 2 attached hereto.

## Causes of Action

38. Plaintiff was subjected to less favorable terms and conditions of employment with defendant based on her race, and sex, than similarly situated non-minority, including being required to work on-site rather than remotely or from home as other employees, to work without the help

that was required to complete the work assigned, as other employees in violation of 42 U.S.C. §1981.

39. Plaintiff was subjected to disparate treatment based on her race, and sex in violation of Title VII of the Civil Rights Act of 1964 (as amended).

40. Plaintiff was retaliated against for having complained about discriminatory practices, and terminated, in violation of 42 U.S.C. §1981.

41. Defendant's interactions with Plaintiff as described herein, were a violation of Arkansas Civil Rights Act as codified at Ark. Code Ann. §16-123-101 *et seq.* and based upon the protections of the Arkansas State Constitution and other applicable rights and protections under Arkansas law.

42. Plaintiff applied for unemployment compensation through Arkansas Department of Workforce Services (hereinafter, "DWS").

43. Defendant challenged Plaintiff's claim for benefits and asserted that she failed to perform the requirements of the job despite their repeated efforts to gain her compliance.

44. Plaintiff's claim for unemployment compensation was denied pursuant to Ark. Code Ann. § 11-10-514(a)(1) (Repl. 2012), that Plaintiff was disqualified from receiving benefits because she was discharged for misconduct connected with the work.

45. Specifically, during a hearing at which the parties testified under oath, Defendants admitted that their initial representations about why they terminated her employment were false and pretextual.

46. The Appeal Tribunal reversed its unfavorable determination of the Department and awarded benefits to Plaintiff.

47. The conduct described in Paragraphs 42-46 above tortiously interfered with Plaintiff's expectancy to find and replace her employment and income.

48. Defendant engaged in this tortious conduct with full knowledge of Plaintiff's expectations, and intentionally fabricated false information to interfere with her application.

49. Defendant provided the same false and pretextual information to the Equal Employment Opportunity Commission in response to Plaintiff's complaint.

50. Defendant's conduct described herein was intentional, inducing and causing both the rejection of her complaint for discrimination and denial of her claim for unemployment benefits.

51. Defendant was negligent in the hiring, retention, and supervision of Brittany Rankin and Amber Reilly and their negligence was the direct and proximate cause of the conduct complained of herein.

52. As a direct and proximate cause of the discriminatory and tortious conduct committed by the Defendant and its employees, Plaintiff has suffered damages in that she has experienced mental anguish, humiliation, embarrassment, loss of employment opportunities, as well as loss of income.

53. This lawsuit has been filed within the requisite ninety days of Plaintiff's receipt of the "Notice of Right to Sue" letter issued by the EEOC. (See Exhibit 2 attached hereto and incorporated herein.)

## Relief Sought

WHEREFORE, Plaintiff is seeking the following remedies for the above described unlawful employment practices:

a) Declaratory relief describing the violation of her rights;

b) Back pay;

c) Compensatory damages for lost wages, including front pay in lieu of reinstatement, fringe benefits, retirement benefits, bonuses, residuals, 403(b) contributions, and any other compensation to which Plaintiff has been either deprived or may prove herself entitled, including interest thereon;

d) Punitive damages;

e) Cost of litigation and reasonable attorneys' fees; and

f) All other equitable, legal and just relief to which she may prove herself entitled.

Plaintiff hereby makes demand for a jury trial.

Respectfully submitted,

BY: _____
LORRAINE HATCHER, AR Sup Ct # 2003-009
Attorney for Plaintiff
P.O. Box 21294
Little Rock, AR 72221
Phone: (501) 681-2402
email: lorrainehatcher@yahoo.com